UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WILLIAM C. DICKS,

                Petitioner,

vs.                                    Case No. 3:16-cv-581-J-39PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                Respondents.

_____

## ORDER

### I.  INTRODUCTION

    Petitioner William C. Dicks, challenges a 2010 Columbia County

conviction for burglary of a dwelling.  In his Amended Petition

(Doc. 3), he raises five claims for habeas relief.  Respondents

filed an Answer to Petition for Writ of Habeas Corpus (Response)

(Doc. 21) and a Notice of Filing and Serving Exhibits (Doc. 22).[1]

Petitioner filed a Response to Respondents' Answer to Petition for

Writ of habeas Corpus (Doc. 23).  See Order (Doc. 10).

### II.  CLAIMS OF PETITION

    The Amended Petition presents five claims for relief:  (1)

ineffective assistance of counsel for failure to interview, depose,

_____

    [1] The Court hereinafter refers to the Exhibits as "Ex."  Where
provided, the page numbers referenced in this opinion are the Bates
stamp numbers at the bottom of each page of the exhibit.
Otherwise, the page number on the particular document will be
referenced.  The Court will reference the page numbers assigned by
the electronic docketing system where applicable.

and present two witnesses (Samantha McGuigan and Brandon Dicks) for the defense at trial; (2) ineffective assistance of counsel for misadvising Petitioner concerning the consequences of Petitioner's right to testify; (3) ineffective assistance of counsel based on counsel's concession of guilt throughout the trial; (4) ineffective assistance of counsel for failure to object to prosecutorial misconduct during closing argument regarding the prosecutor's intentional misstatement of the law defining dwelling; and (5) ineffective assistance of counsel for failure to ensure Petitioner was aware of the possible enhancements of Prison Release Reoffender (PRR) and Habitual Felony Offender (HFO) prior to Petitioner's refusal of the plea offer.

The Court will address these grounds, <u>see</u> <u>Long v. United States</u>, 626 F.3d 1167, 1169 (11th Cir. 2010) ("The district court must resolve all claims for relief raised on collateral review, regardless of whether relief is granted or denied.") (citing <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir. 1992) and <u>Rhode v. United States</u>, 583 F.3d 1289, 1291 (11th Cir. 2009)), but no evidentiary proceedings are required in this Court.

It is Petitioner's burden to establish the need for a federal evidentiary hearing. <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012). A district court is not required to hold an evidentiary hearing if the record refutes the asserted factual allegations or

otherwise precludes habeas relief.[2] <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). In this case, the pertinent facts are fully developed in the record before the Court. As a result, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), and no further evidentiary proceedings are required in this Court.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1432 (2017). "AEDPA limits the scope of federal habeas review of state court judgments[.]" <u>Pittman v. Sec'y, Fla. Dep't of Corr.</u>, 871 F.3d 1231, 1243 (11th Cir. 2017). As such, AEDPA ensures that federal habeas relief is limited to extreme malfunctions, and not used as a means to attempt to correct state court errors. <u>Ledford</u>, 818 F.3d at 642 (quoting <u>Greene v. Fisher</u>, 132 S.Ct. 38, 43 (2011)).

The parameters of review are as follows:

---

[2] It is important to note that Petitioner received a post conviction evidentiary hearing in the trial court on several claims of ineffective assistance of counsel. Petitioner retained counsel for the post conviction proceeding. Ex. T at 74. The record shows retained counsel, Travis Koon, represented Petitioner in the evidentiary proceeding which took place on September 3, 2014. <u>Id</u>. at 80, Evidentiary Hearing.

Thus, under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court—not Supreme Court dicta, nor the opinions of this Court." Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293–94 (11th Cir. 2014).

As for the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Terry Williams v. Taylor, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts." Id. at 413, 120 S.Ct. 1495. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). And "an 'unreasonable application of' [Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (quotation

omitted). To overcome this substantial hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This is "meant to be" a difficult standard to meet. Id. at 102, 131 S.Ct. 770.

Pittman, 871 F.3d at 1243-44.

There is a presumption of correctness of state court's factual findings, unless the presumption is rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard of proof is demanding, requiring that a claim be highly probable. Bishop v. Warden, GDCP, 726 F.3d 1243, 1258 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014). Also, the trial court's determination will not be superseded if reasonable minds might disagree about the factual finding. Brumfield v. Cain, 135 S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th

Cir. 2016).[3] Once identified, the Court reviews the state court's decision, "not necessarily its rationale." <u>Pittman</u>, 871 F.3d at 1244 (quoting <u>Parker v. Sec'y for Dep't of Corr.</u>, 331 F.3d 764, 785 (11th Cir. 2003) (citation omitted)).

Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Richter</u>, 562 U.S. at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. <u>Id</u>. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

---

    [3] As suggested by the Eleventh Circuit in <u>Butts v. GDCP Warden</u>, 850 F.3d 1201, 1204 (11th Cir. 2017), <u>cert</u>. <u>denied</u>, 138 S.Ct. 925 (2018), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227 (11th Cir. 2016) (en banc), <u>cert</u>. <u>granted</u>, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

inconsistent with the holding in a prior decision of [the] Court."
<u>Richter</u>, 562 U.S. at 102; <u>Marshall</u>, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error), <u>petition</u> <u>for</u> <u>cert.</u> <u>docketed</u> <u>by</u> (U.S. Mar. 9, 2018) (No. 17-8046). Indeed, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

### IV. PROCEDURAL HISTORY

The Court will provide a brief procedural history. Petitioner and his brother, Brandon Andrew Dicks, were charged by information with burglary of a dwelling, grand theft III, and criminal mischief. Ex. A at 8-9. On November 22, 2010, the state filed a Notice of State's Intention to Seek Sentencing as a Habitual Felony Offender Pursuant to Florida Statue [sic] 775.084.[4] <u>Id</u>. at 67.

---

[4] The state gave Notice of Defendant's Qualification as Prison Release Reoffender and Required Sentencing Term Pursuant to F.S.. [sic] 775.082, although the certificate of service is not signed. Ex. A at 68. The trial court considered the timing of the provision of the notice at the evidentiary hearing.

The state also filed a Notice of Intent to Offer Evidence of Other Crimes, Wrongs or Acts, commonly referred to as Williams[v. State, 110 So.2d 654 (Fla. 1959)] Rule evidence.

By amended information, Petitioner was charged with burglary of a dwelling. Ex. A at 102. On December 9, 2010, the trial court conducted a jury trial. Ex. D. The jury returned a verdict of guilty as charged. Ex. A at 128; Ex. D at 151. The trial court denied the motion for new trial. Ex. C at 4.

On January 7, 2011, the trial court held a sentencing proceeding. Ex. C, Sentencing Proceeding. The court sentenced Petitioner as a PRR offender to a mandatory minimum term of fifteen years in imprisonment. Ex. B at 218-20. The court entered judgment and sentence on January 7, 2011. Id. at 216-20.

Petitioner appealed his conviction. Id. at 279. Through counsel, Petitioner filed an appeal brief. Ex. E. The state filed an answer brief. Ex. F. Petitioner replied. Ex. G. On December 20, 2011, the First District Court of Appeal (1st DCA) affirmed with a written decision. Ex. H. The mandate issued on January 5, 2012. Ex. J.

On April 15, 2012, pursuant to the mailbox rule, Petitioner filed a Motion for Leave to Exceed Page Limit on Postconviction Relief, Ex. Q, and a Motion for Postconviction Relief. Ex. R. The trial court denied the motion to exceed the page limit and notified Petitioner he could re-file a motion in compliance with the rules. Ex. S.

Petitioner filed a Motion for Postconviction Relief (Rule 3.850 motion), pursuant to the mailbox rule, on June 25, 2012. Ex. T. The Court set an evidentiary hearing on grounds 1B, 2 and 6. Id. at 68-69. Travis Koon, retained counsel, entered a Notice of Appearance for Petitioner. Id. at 74-75. The trial court conducted an evidentiary hearing on September 3, 2014. Id. at 80-144.

The trial court denied the Rule 3.850 Motion in its Order Denying Motion for Postconviction Relief. Id. at 145-200. Petitioner appealed. Ex. CC. The state filed an answer brief. Ex. DD. Petitioner replied. Ex. EE. The 1st DCA, on February 24, 2016, per curiam affirmed. Ex. FF. The mandate issued on March 22, 2016. Ex. GG.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on a Sixth Amendment claim of ineffective assistance of trial counsel, a petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). The Eleventh Circuit, in Reaves v. Sec'y, Fla. Dep't of Corr., 872 F.3d 1137, 1148 (11th Cir. 2017) (quoting Strickland, 466 U.S. at 687), instructed: a counsel's performance is deficient only if counsel's errors are "so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." And importantly, with regard to the establishment of prejudice requirement, the Eleventh Circuit related that the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome. <u>Id</u>. (quoting <u>Strickland</u>, 466 U.S. at 694).

It is important to note that both parts of the <u>Strickland</u> test must be satisfied. <u>Bester v. Warden, Att'y Gen. of the State of Ala.</u>, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)), <u>cert</u>. <u>denied</u>, 137 S.C. 819 (2017). However, a court need only address one prong, and if it is found unsatisfied, the court need not address the other. <u>Id</u>.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground 1A

In ground one, Petitioner raises a claim of ineffective assistance of trial counsel, complaining that counsel failed to interview, depose, and present two witnesses (Samantha McGuigan and Brandon Dicks) for the defense at trial. Amended Petition at 5. As noted by Respondents, Petitioner raised this claim of ineffective assistance of counsel in ground one of his Rule 3.850 motion, and this claim is exhausted. Response at 26-27.

In ground 1A, Petitioner claims his girlfriend, Samantha McGuigan, would have provided alibi testimony. Amended Petition at 5. This claim has no merit.

Petitioner asserts he was with Ms. McGuigan on March 31, 2010, and she could have provided alibi testimony that Petitioner was not on the victim's property cutting or pulling copper wiring on that date. As recognized by the trial court, this assertion is unavailing because the offense did not occur until April 1, 2010, and Petitioner was caught red-handed, underneath the mobile home on April 1, 2010.

Notably, the trial court, in denying the Rule 3.850 motion, referenced the applicable two-pronged <u>Strickland</u> standard as a preface to addressing Petitioner's claims of ineffective assistance of counsel. Ex. T at 146. The court explained its basis for denying this claim:

> However, the Defendant was not on trial for conduct that allegedly occurred on March 31 for which Ms. McGuigan's potential "alibi" testimony would have been beneficial. If Ms. McGuigan could have *provided* alibi testimony for the actual time of the offense - on April 1, when the Defendant was discovered under the mobile home at 1:52 p.m. (*See attached Jury Trial transcript at 46, testimony of Deputy Rhodes*) - her testimony would have potentially exonerated the Defendant. However, the Defendant does not allege that Ms. McGuigan could provide such testimony. Instead, her testimony concerning the Defendant's whereabouts on March 31, the day before the incident, are immaterial in this case. Moreover, the Defendant, in the instant motion, admits that he was present at the scene on April 1, thereby defeating any

> potential alibi defense. Therefore, the
> Defendant cannot show how trial counsel's
> failure to call Ms. McGuigan was deficient or
> how the Defendant was prejudiced by this
> conduct. Accordingly, Ground One-A fails and
> must be denied.

Ex. T at 147-48.

"Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [a court] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995), cert. denied, 516 U.S. 856 (1995). In order to demonstrate ineffectiveness, the decision must be so patently unreasonable that no competent attorney would have chosen that path. Dingle v. Sec'y for the Dep't of Corr. 480 F.3d 1092, 1099 (11th Cir. 2007) (quotation omitted), cert. denied, 552 U.S. 990 (2007). See Rizo v. United States, No. 03-20010-CIV, 2014 WL 7152755, at *5 (S.D. Fla. Dec. 15, 2014) (finding counsel's decision not to call alibi witnesses was not unreasonable, particularly where the alibis were not airtight, avoiding leaving the jury with the conundrum as to whether to focus more on the proof of the alibi than on whether the state has met its burden of proof), aff'd, 662 F. App'x 901 (11th Cir. 2016).

Upon due consideration, Petitioner has not shown that Mr. Siegmeister's decision not to present an alibi defense was an unreasonable strategic move that no competent counsel would have taken. In this instance, Petitioner's counsel's decision not to call Ms. McGuigan as a witness was not unreasonable or otherwise

deficient.  Furthermore, Petitioner failed to establish prejudice by counsel's failure to call Ms. McGuigan.

Here, the trial court found Petitioner failed to satisfy the performance and prejudice prongs of Strickland and denied post conviction relief.  The 1st DCA affirmed the decision of the trial court.  Ex. FF.  The 1st DCA did not give reasons for its summary affirmance; however, if there was any reasonable basis for the court to deny relief, the denial must be given deference by this Court.  Cullen v. Pinholster, 563 U.S. 170, 187-88 (2011).

There is a qualifying state court decision and AEDPA deference is warranted.  The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground 1A because the state court's decision was not contrary to clearly established federal law, Strickland and its progeny, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

### B.  Ground 1B

Petitioner claims his counsel was ineffective for failure to interview, depose, and present Brandon Dicks for the defense at trial.  Amended Petition at 5.  The trial court set ground 1B for an evidentiary hearing.  Ex. T at 68-69.  Petitioner testified at the evidentiary hearing.  Id. at 84.  He said Mr. Dicks was

subpoenaed for trial and sworn in by the court.  _Id_. at 86.  Prior

to trial, Petitioner discussed with his counsel calling Mr. Dicks.

_Id_.  Petitioner attested he did not know if his counsel had

interviewed Mr. Dicks.  _Id_. at 86-87.  When asked about the content

of Mr. Dicks' testimony if called at trial, Petitioner responded:

> A    That he [Brandon Dicks] had been there
> the day before and took -- cut copper wire and
> was unable to pull it.  You know, that's why I
> had went back with him to pull copper wire out
> from underneath the house.
>
> Q    And did you have knowledge that a crime
> was being committed at that time?
>
> A    Yes, sir.

_Id_. at 87.  Consistent with his testimony on direct, on cross

examination, Petitioner said Brandon Dicks would have testified

that he was the individual present at the scene the day before the

arrest.  _Id_. at 94.

Petitioner's trial counsel, Mr. Siegmeister, testified he was

not asked to depose Mr. Dicks, the Petitioner's brother, prior to

trial.  _Id_. at 109-10.  In addition, Mr. Siegmeister said he was

not asked to call Mr. Dicks as a witness at trial.  _Id_. at 110.

Mr. Siegmeister said the matter of calling Mr. Dicks was discussed

with Petitioner.  _Id_.

Mr. Siegmeister explained his strategic decision not to call

Mr. Dicks:  "[h]e [Brandon Dicks] pled on December 3rd and gave a

proffer that was, I would say going to help convict my client, Mr.

[William] Dicks.  And in light of the State's presentation, it was

a tactical decision not to call him [Brandon Dicks]." <u>Id</u>.  Mr.
Siegmeister explained that he was well aware of what Brandon Dicks
would have testified to if called at trial, as Mr. Siegmeister was
present at Mr. Dicks' proffer and had the proffer video.  <u>Id</u>.  Not
only did Mr. Siegmeister listen to the proffer, he spoke with Mr.
Dicks and he spoke with "Ms. Mears" the day Mr. Dicks pled.  <u>Id</u>.
Mr. Siegmeister also spoke with "Mr. Durrett [the prosecutor] about
what [Mr. Dicks'] testimony would be[.]" <u>Id</u>.

Concerning the events at trial, Mr. Siegmeister testified that
he spoke to Brandon Dicks multiple times on the day of Petitioner's
trial.  <u>Id</u>.  As a state's witness, Mr. Dicks was present, under the
state's subpoena.  <u>Id</u>.  Mr. Siegmeister decided not to call Mr.
Dicks for any purpose:

> Well, I mean I think the record somewhat
> speaks for itself.  But my client was found
> underneath the alleged victim's house with
> tools that allowed him to take copper wiring.
> The State had <u>Williams</u> Rule evidence that he
> was involved with other thefts in another
> county and his brother put him at the scene
> and actually established the intent element of
> the theft.  My whole defense was he was a
> trespasser, not a burglar.  And his brother
> would have said, even though it was consistent
> with what Mr. Dicks just testified to, he
> would have said, yes, I was there earlier and
> I brought my brother back to help me steel
> [sic] copper.  And that would have pretty much
> been a plea of guilty for my client.  And so
> calling him would have been ineffective, he
> would have established all the elements of the
> burglary.  I just, I mean, I figured the State
> would call him and I was prepared to cross him
> the best I could and shift as much blame as I
> could to his brother.  But it didn't change
> the fact that my client was found literally by

> the victim and the police underneath the
> trailer with tools in his possession and wire
> all spooled up.

Id. at 111-12.  Finally, counsel explained that due to the state

not calling Mr. Dicks or presenting Williams Rule evidence, defense

counsel decided not to "open that door."  Id. at 112.

On cross examination, Mr. Siegmeister testified that, not only

is he very experienced defense counsel, he had been an assistant

state attorney and tried a hundred jury trials as a prosecutor,

legal counsel for the sheriff's office, and an adjunct professor of

law at St. Leo's college.  Id. at 118.  As far as criminal defense

work, he testified he had his own defense practice and defended

well over a thousand clients, including representing defendants in

at least 100 jury trials.  Id.  Mr. Siegmeister testified he is

"currently the elected state attorney for the third circuit."  Id.

As far as counsel's decision not to call Brandon Dicks, Mr.

Siegmeister, after investigation, concluded Mr. Dicks "was not

going to negate William Dicks' guilt."  Id. at 120.  Basically, Mr.

Dicks was going to testify that he told Petitioner about the

trailer, and they could go steal the cooper.  Id.  Mr. Dicks pled

to probation.  Id.  Mr. Siegmeister concluded that nothing Mr.

Dicks would have testified to would have negated an element of the

state's case against Petitioner.  Id. at 120-21.

At trial, Mr. Siegmeister argued Petitioner was a trespasser,

not a burglar.  Id. at 122.  Mr. Siegmeister recognized that if he

blamed Brandon Dicks, the prosecutor would have called Mr. Dicks in

rebuttal and would have put Petitioner at the scene with intent to steal. Id. at 122-23.

At the evidentiary hearing, the assistant state attorney asked Mr. Siegmeister about his decision not to call Mr. Dicks:

> Q    Okay.  So it definitely would have weakened your defense?
>
> A    Yes.
>
> Q    Absolutely if you called him.
>
> A    Yes.
>
> Q    Is it fair to say that this was a strategic decision?
>
> A    Oh, most definitely.  Most definitely.
>
> Q    That he would have helped a little bit, but hurt even more?
>
> A    He would have hurt very much more.

Id. at 123.

In this habeas proceeding, it is certainly significant that the records shows Petitioner had the benefit of experienced counsel: "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1364 (11th Cir. 2009) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)), cert. denied, 562 U.S. 872 (2010).

The record demonstrates that Mr. Siegmeister had a wealth of experience representing criminal defendants, pre-trial and at

- 17 -

trial.  Also very important to this case, Mr. Siegmeister was very
familiar with Petitioner's brother's case.  Mr. Siegmeister
attended the plea proffer and spoke with Mr. Dicks and other
individuals with relevant information.

After conducting an evidentiary hearing, the trial court
addressed Petitioner's claim of ineffective assistance of counsel
and found:

> Based upon his motion and evidentiary
> hearing testimony, the Defendant mistakenly
> believes that the Burglary of a Dwelling
> occurred on March 31, 2010, when his brother
> was alone at the scene, and therefore, the
> Defendant would not have been convicted of
> this offense if his brother had been called to
> "clarify" this point.  However, this is not
> the case.  The Defendant was charged with
> conduct that occurred on April 1, 2010, when
> he was found under the mobile home.
>
> Additionally, the Defendant refuted his
> allegation in his motion that Brandon Dicks's
> testimony would have proven that the Defendant
> was unaware (lacked the "criminal intent")
> that the copper wire being taken did not
> belong to his brother Brandon Dicks by his own
> admission at the evidentiary hearing . . . .
> This admission alone defeats the Defendant's
> allegation in Ground One-B.

Ex. T at 148.

The trial court noted that, even assuming Brandon Dicks would
have testified that he alone was at the mobile home the day before
the arrest, March 31, 2010, this fact would not absolve Petitioner
of the burglary which occurred on April 1, 2010.  Id. at 148-49.
Petitioner had no alibi for April 1, 2010, and he was caught,
underneath the mobile home, on April 1, 2010.

After taking into consideration the content of Mr. Siegmeister's testimony at the evidentiary hearing, the trial court concluded that counsel "made a tactical decision to not call Brandon Dicks" because his testimony would have harmed Petitioner's case. <u>Id</u>. at 149. The trial court reasoned that defense counsel made his decision after considering alternative courses of action, but rejected them. <u>Id</u>. The trial court decided counsel's decision to not call Brandon Dicks was "sound trial strategy." <u>Id</u>. at 150. As such, the court found counsel's performance was not deficient for failing to call Mr. Dicks. <u>Id</u>.

Again, the decision to call a witness is a strategic decision, <u>Waters</u>, 46 F.3d at 1512, and the decision will not be considered to be ineffective unless it is so patently unreasonable that no competent attorney would have made that decision. <u>Dingle</u>, 480 F.3d at 1099. Here, Mr. Siegmeister chose to not call Brandon Dicks for any purpose at trial. Mr. Dicks, a co-defendant, was a state's witness, under subpoena by the prosecutor. Mr. Dicks had pled out to the offense and made a proffer which was not favorable to Petitioner. Defense counsel was fully aware of the content of this proffer, and had obtained additional information by speaking to Mr. Dicks and the prosecutor on the day of the proffer.

In this instance, Petitioner has not demonstrated that Mr. Siegmeister's decision not to call Mr. Dicks was an unreasonable strategic move that no competent counsel would have taken. Counsel's decision was not unreasonable or otherwise deficient, and

as such, Petitioner has failed to establish the first prong of
Strickland.  Therefore, he is not entitled to habeas relief.

The trial court employed the Strickland standard and found no
deficient performance.  Thus, the court found the first prong of
the Strickland standard had not been met.  The record shows the 1st
DCA affirmed the decision of the trial court in denying this
ground, and this Court will presume that the state court
adjudicated the claim on its merits, as there is an absence of any
indication or state-law procedural principles to the contrary.
Since the last adjudication on the merits is unaccompanied by an
explanation, it is Petitioner's burden to show there was no
reasonable basis for the state court to deny relief.  He has failed
in this regard.

Upon review, there is a reasonable basis for the court to deny
relief; therefore, the denial must be given deference.  The 1st
DCA's decision is not inconsistent with Supreme Court precedent,
including Stickland and its progeny.  Thus, the state court's
adjudication of this claim is not contrary to or an unreasonable
application of Strickland, or based on an unreasonable
determination of the facts.  Accordingly, ground 1B is due to be
denied.

## C.  Ground Two

In ground two, Petitioner raises a claim of ineffective
assistance of counsel for misadvising Petitioner concerning the
consequences of Petitioner's right to testify.  Amended Petition at

9. In this ground, Petitioner claims his attorney advised him he would be defenseless if he took the stand, his criminal record would be exposed, the state would use Petitioner's record against him, and the state would be allowed to reveal the exact nature of Petitioner's prior convictions. Id.

The trial court conducted an evidentiary hearing on this ground. Petitioner testified he had approximately seven prior felonies at the time of his trial. Ex. T at 95. He said that his attorney told him the state would be able to bring up his past history and use it against Petitioner to make him look bad. Id. at 96. Petitioner testified that he was aware that he could have taken the stand even if his counsel advised him it was not a good idea. Id. at 97. Petitioner admitted that when the trial court asked him if he wanted to testify, he said he did not want to testify. Id. at 97-98.

With regard to his advice to Petitioner, Mr. Siegmeister testified he based his advice not just on the fact that Petitioner was a seven-time convicted felon, but more importantly, on the fact that the state had filed a Williams Rule notice. Id. at 112. The notice concerned a companion burglary involving Petitioner and his girlfriend, and the sale of the same type of materials to one of the state's witnesses. Id. Defense counsel believed it to be "absolute malpractice" to put Petitioner on the stand and open himself up to cross examination about this other burglary. Id. Mr. Siegmeister thought that the jury would not be receptive to the

defense that this was trespass, not burglary, if it heard about the <u>Williams</u> Rule evidence as well as Petitioner being a seven-time convicted felon. <u>Id</u>. at 113.

Mr. Siegmeister testified that he never told Petitioner he could not testify. <u>Id</u>. Defense counsel noted that Petitioner's testimony would either have been perjurious or "it would have convicted him."[5] <u>Id</u>. at 114. Defense counsel advised Petitioner he had the right to testify, and the trial judge did a colloquy concerning Petitioner's right to testify. <u>Id</u>.

Mr. Siegmeister reiterated that he told Petitioner he had an absolute right to testify, and the trial judge reconfirmed this advice at trial. <u>Id</u>. at 124. Mr. Siegmeister described his legal advice to Petitioner:

> I will admit I told him I strongly suggested he not testify since the State didn't put <u>Williams</u> Rule evidence on. It would subject –– he was put on notice there was no real legal argument to keep out the pending burglary in Suwannee County because we had been put on notice and reached a stipulation to the limited use of it. And if he testified, hey, I never did this before, or minimized it in any way, Mr. Durrett [the prosecutor], who is a very good trial attorney, was going to, pardon my expression, eat his lunch.

<u>Id</u>.

---

[5] Petitioner admitted at the evidentiary hearing that after his brother told him about the mobile home, Petitioner went to the scene knowing they were going to steal copper. Ex. T at 87.

Thus, two significant factors persuaded defense counsel to advise against Petitioner testifying: the seven prior convictions and the <u>Williams</u> Rule evidence, which had not been presented by the state in its case. <u>Id</u>. Counsel said he never would have told Petitioner the nature of the priors would come in if he admitted the number of priors. <u>Id</u>. at 125. Counsel's paramount concern, and what he feared the most about Petitioner possibly testifying, was the <u>Williams</u> Rule evidence of which the state had provided notice. <u>Id</u>.

The trial record demonstrates that, after the state rested, Mr. Siegmeister asked the court to address Petitioner's right to testify, noting that there had been an off-the-record discussion between Mr. Siegmeister and his client. Ex. D at 103. The following colloquy took place:

> THE COURT: Certainly. Mr. Dicks, what you say to your attorney between the two of you is private between you, but one thing that comes up that judges inquire about is did your attorney speak with you about your right to testify. You have a right to testify, but you also have a right not to testify. Did he talk with you about that?
>
> THE DEFENDANT: Yes, sir
>
> THE COURT: And have you made a decision with him?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you decided not to testify?
>
> THE DEFENDANT: Yes, sir.

Id.

The trial court, in denying this claim of ineffectiveness, pointed out that Petitioner admitted knowing at the time of trial that he could have taken the stand, even if his counsel advised otherwise. Ex. T at 151. The court referenced counsel's two-fold reasons for recommending Petitioner not testify. Id. at 152.

With respect to the question as to whether Petitioner was aware of his absolute right to testify, the court found Petitioner's counsel more credible in this regard. Id. at 153. "As such, this Court believes and finds that the Defendant was adequately advised of his right to testify and the consequences associated with exercising that right by trial counsel and that the Defendant understood that he could testify despite his trial counsel's advice and recommendation to the contrary." Id.

Again, the post conviction court applied the two-pronged Strickland standard, finding Petitioner failed to satisfy the first prong of the two-part test. Of importance, the 1st DCA affirmed the decision of the circuit court in denying this ground, and this Court will presume that the state court adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed in this regard.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. The 1st DCA's decision is not inconsistent with Supreme Court precedent, including _Stickland_ and its progeny. Thus, the state court's adjudication of this claim is not contrary to or an unreasonable application of _Strickland_, or based on an unreasonable determination of the facts. Accordingly, ground two is due to be denied.

### D.  Ground Three

In ground three, Petitioner raises a claim of ineffective assistance of trial counsel based on counsel's concession of Petitioner's guilt throughout the trial. Amended Petition at 12. With respect to the question of exhaustion, Petitioner raised this claim as ground three of the Rule 3.850 motion. Ex. T at 13-21. The trial court, without conducting an evidentiary hearing on this particular claim of ineffective assistance of counsel, denied post conviction relief. The 1st DCA affirmed without opinion.

Admittedly, trial counsel told the jury that Petitioner may be guilty of trespass or stealing, but counsel adamantly denied that Petitioner was a burglar or was guilty of burglary. Petitioner, believing the terms "steal" and "burglary" are synonymous, found fault with counsel's trial tactics of conceding Petitioner's guilt to trespass, but the trial court found Petitioner's contention flawed. Ex. T at 153.

The trial court explained its reasoning. First, defense counsel was faced with certain irrefutable facts: Petitioner was found at the scene of the crime, under the mobile home, near copper wiring. Id. at 154. Thus, counsel had no real choice but to concede Petitioner was trespassing, because he was caught underneath the mobile home. Petitioner could not believably refute these facts, and counsel was left having to explain or justify Petitioner's presence under the mobile home. The court found trial counsel's concession "was not a leap or an unfounded concession" as it was in accordance with Petitioner's proposed testimony, that he was found under the mobile home and was at the scene rolling up copper wiring. Id.

In closing argument, trial counsel urged the jury to find that Petitioner was guilty of misdemeanor trespassing, an option available for the jury to select on the verdict form, or theft, which was not an available verdict to select, meaning the jury would be left with a not guilty verdict as a viable option. Ex. D at 123. The trial court found this to be sound strategy on defense counsel's part, stating:

> The Defendant was charged with a second-degree felony punishable by fifteen years in prison. The Defendant's trail [sic] counsel provided the jury with a feasible and favorable outcome - find the Defendant guilty of the lesser included offense of trespass, a misdemeanor of the second degree (§ 810.08); or find that the Defendant had committed a theft (stealing copper wire), which, as it was not charged in the amended information and was not a lesser included offense, would have resulted in a not

- 26 -

> guilty verdict. The Defendant's trial counsel
> plainly explained how these were viable
> options available to the jury, and it is clear
> that either would have been preferable to a
> guilty-as-charged verdict.

Ex. T at 154.

The trial court further explained that any concession to trespass did not support or establish burglary and any reference to theft was in accordance with the facts and testimony. Id. at 154-55. The court distinguished the attorney's concession to trespass and theft from admitting participation in the burglary; the defense theory maintained denial of entry into the dwelling or crossing the threshold of the dwelling, facts which would support a finding of guilt to the burglary charge. Id. at 155.

In closing, defense counsel argued Petitioner was outside of the mobile home rolling up wire, and when the police pulled up, Petitioner crawled under the house. Ex. D at 125. Mr. Siegmeister suggested that this amounted to stealing, as Petitioner had been rolling up the wire, or merely trespassing, but not burglary. Id.

The trial court, after reviewing defense counsel's performance, found Petitioner failed to satisfy either the performance prong or the prejudice prong of Strickland. Ex. T at 157. Indeed, the court found that trial counsel's defense theory, not to deny all criminal activity, was reasonable in light of the facts and circumstances presented, and it would have been "an illogical defense" to contend otherwise. Id.

As noted previously, the court referenced the applicable two-pronged Strickland standard as a preface to addressing Petitioner's claims of ineffective assistance of counsel, and the court employed the two-pronged test when addressing this particular claim of ineffective assistance of trial counsel. The record demonstrates that trial counsel's actions were within the broad range of reasonably competent counsel under prevailing professional norms. There is no reasonable probability that, if counsel has acted as Petitioner suggests, the result of the proceeding would have been different.

The 1st DCA affirmed the trial court's decision. There is a reasonable basis for the state court to deny relief, and this decision must be given deference. The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Thus, AEDPA deference is due, and Petitioner is not entitled to relief on ground three.

### E.  Ground Four

In ground four, Petitioner raises a claim of ineffective assistance of counsel for failure to object to prosecutorial misconduct during closing argument regarding the prosecutor's intentional misstatement of the law defining dwelling. Amended Petition at 14. Petitioner exhausted this ground by raising it in

ground four of his Rule 3.850 motion and appealing the denial of this claim.

It is important to note that on direct appeal, Petitioner, through counsel, claimed "the state thoroughly misstated the law of burglary during closing arguments, removing crucial questions from the jury's consideration and creating fundamental error." Ex. E at i. Addressing this claim, the 1st DCA opined, "[t]here is no dispute that the prosecutor's definition of a dwelling designed to include a trespass on unenclosed property surrounding the dwelling expressed an erroneous interpretation of the law." Ex. H at 5. However, the 1st DCA did not find fundamental error because Petitioner was not discovered outside in the unenclosed yard. Id. at 7-8. Instead, Petitioner was found underneath the mobile home, removing the copper wiring. Id. at 7. The 1st DCA did not find convincing the argument that the jury's verdict was contrary to the law of burglary, allowing that removal of copper wiring underneath a home "penetrated the invisible, vertical plane into the airspace of the house by crawling under the house to gain access to the [wiring,]" thereby entering the house. Id. at 8 (quoting Tindall v. State, 997 So.2d 1260, 1261 (Fla. 5th DCA 2009).

In denying the claim of ineffective assistance of counsel raised in the Rule 3.850 motion, the trial court found deficient performance by trial counsel for failing to object to the prosecutor's misstatement of law, but not prejudice. Ex. T at 158. The trial court correctly recognized that a petitioner must also

satisfy the prejudice prong of <u>Strickland</u> in order to obtain post conviction relief. <u>Id</u>. Finding any potential prejudice cured by the actions of the court and defense counsel, the court held Petitioner failed in this regard. <u>Id</u>.

The records shows that the trial court properly instructed the jury as to the definition of dwelling:

> Dwelling means a building of any kind, whether such a building is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the enclosed space of ground and outbuildings immediately surrounding it. For the purposes of burglary, a dwelling includes an attached porch or attached garage.

Ex. D at 135.

Thus, on post conviction review, the trial court concluded that as the jury had been properly instructed, there was no reasonable probability that but for counsel's error in failing to object, the result of the proceeding would have been different. Ex. T at 158. The court also noted, in addition to the court's instructions, the jury also heard defense counsel's argument, which sought to correct the prosecutor's misstatements during closing argument. <u>Id</u>.

The trial record shows that defense counsel, during closing argument, said he had a legitimate disagreement with the state's position on the case because when dwelling is defined by the court, the jury will hear that, other than the inside of the building, a dwelling may include the enclosed yard, but in this case, it was

not an enclosed yard.  Ex. D at 120.  To support his argument,
defense counsel summarized the definition of dwelling for the jury.
Id. at 121.

The trial court, in denying post conviction relief, stressed
that although defense counsel did not object to the misstatements
of the prosecutor, "he countered them during his closing remarks."
Ex. T at 158.  The trial court found the potential prejudice of the
prosecutor's misstatement of the definition of dwelling was
satisfactorily removed by the actions of the court and defense
counsel.  Id. at 158-59.

In order to show a violation of the Sixth Amendment, both
parts of the Strickland test must be satisfied.  The trial court
rejected Petitioner's claim, finding he failed to demonstrate
prejudice, the second prong.  The 1st DCA affirmed without a
written decision.

The Court will presume, under these circumstances, the 1st DCA
adjudicated the claim on its merits as there is an absence of any
indication or state-law procedural principles to the contrary.
Petitioner has failed to meet his burden to show that there was no
reasonable basis for the state court to deny relief.

Upon review, there is a reasonable basis for the court to deny
relief; therefore, the denial must be given deference.  Thus,
deference under AEDPA should be given to the last adjudication on
the merits provided by the 1st DCA.  Given due consideration, its
decision is not inconsistent with Supreme Court precedent,

including _Stickland_ and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of _Strickland_, or based on an unreasonable determination of the facts. As such, ground four is due to be denied.

Alternatively, even assuming deficient performance, Petitioner has not shown resulting prejudice. Indeed, he has not shown that a reasonable probability exists that the outcome of the case would have been different if his counsel had objected to the prosecutor's closing argument. In sum, Petitioner's ineffectiveness claim raised in ground four is without merit since he has not shown resulting prejudice.

## F. Ground Five

In his final ground, Petitioner presents his claim of ineffective assistance of counsel for failure to ensure that Petitioner was aware of the possible enhancements of PRR and HFO prior to Petitioner's refusal of the plea offer. Amended Petition at 17. In ground five, he contends that had he been properly advised, "there is a reasonable probability" he would have accepted the five-year plea offer. _Id_. Respondents note that Petitioner exhausted this ground by raising it in claim six of his Rule 3.850 motion and presenting evidence at the evidentiary hearing. Response at 64. To complete exhaustion, Petitioner appealed the denial of this ground. Ex. CC; Ex. FF.

First of all, the record shows that the state filed a Notice
of State's Intention to Seek Sentencing as a Habitual Felony
Offender, with a certificate of service that Petitioner was mailed
or delivered a true and correct copy of the notice on November 22,
2010.  Ex. A at 67.  On the other hand, the record is unclear with
respect to the mailing of the notice regarding qualification as a
PRR.  Id. at 68.  Importantly, the record demonstrates that the
state's intent to seek enhancement is discussed on the record
immediately following the publishing of the verdict and in the
presence of Petitioner.  Ex. D at 155.  During the discussion, the
state said Petitioner qualifies as both a PRR as well as an HFO.
Id.

Petitioner blames his lack of knowledge about enhancements on
counsel's failure to ensure that his client, pre-trial, was aware
of these potential enhancements.  At the evidentiary hearing,
Petitioner testified he was not notified prior to trial, in
writing, that he qualified as a PRR, nor was he notified in writing
during the trial.  Ex. T at 90.  He testified that his attorney
never provided him with a copy of the document concerning
qualification as a PRR.  Id. at 91.  Petitioner testified that
there were no off-the-record discussions with his attorney
concerning Petitioner's qualification to be sentenced as a PRR
prior to trial.  Id. at 98.  Petitioner testified that there were
no on-the-record discussions before trial concerning PRR
qualification.  Id. at 98-99.  Finally, Petitioner testified that

his attorney never told Petitioner about the HFO notice.  <u>Id</u>. at
101.

At the evidentiary hearing, Petitioner testified that he was
not notified of his PRR or HFO status prior to rejecting the five-
year plea offer.  <u>Id</u>. at 102-103.  He also said he was never
advised that he was facing a prison term of fifteen years if the
state sought PRR status.  <u>Id</u>. at 103.  Petitioner said he never
received a copy of the PRR document.  <u>Id</u>. at 104.  At the hearing,
the parties stipulated that the last court date prior to jury
selection was December 3, 2010.  <u>Id</u>. at 108.

Mr. Siegmeister testified at the evidentiary hearing and
addressed this issue.  <u>Id</u>. at 114.  He said Petitioner was served
with the HFO notice.  <u>Id</u>. at 115.  Mr. Siegmeister related that he
was well aware that Petitioner qualified as a PRR.  <u>Id</u>.  Mr.
Siegmeister said that although he did not know when notice was
actually served, he knew Petitioner was facing it, and he advised
Petitioner accordingly.  <u>Id</u>.  Mr. Siegmeister testified that he
certainly advised Petitioner of it prior to the rejection of the
state's last plea offer.  <u>Id</u>. at 116.  Counsel said that on
December 3rd, he "point-blank told [Petitioner] he was looking at
fifteen years minimum mandatory every day, day for day."  <u>Id</u>.  Mr.
Siegmeister testified that Petitioner was standing in the courtroom
when counsel put on the record that he was looking at fifteen
years, "notwithstanding the HFO sanctions."  <u>Id</u>. at 117.

Additionally, in closing argument, reference is made to the state's evidentiary hearing exhibit 1, the recording from the courtroom on December 3, 2010, in which Petitioner makes an on-the-record acknowledgment that he qualifies for a PRR enhancement. Id. at 138-39.

On re-direct, Mr. Siegmeister responded to Petitioner's allegation that he would have taken the five-year plea offer had he known he was facing an enhanced sentence:

> And with all due respect, that is not a truthful statement. He was advised of his maximum punishment and he turned down all advice as well as plea offers and went to trial facing the maximum. I can't tell you when his notices went. In fact, you've shown me the unsigned copy. I don't think Mr. Durrett gave the PRR notice until after there was a conviction if you want to know the truth.

Id. at 130.

Mr. Siegmeister continued:

> My advice to him was you're facing fifteen years prison and he turned down five years straight -- I mean, not straight time, but five years with credit and gain time on everything, two burglary cases, one in Suwannee and one in Columbia in this courtroom on December 3rd.
>
> I can't tell you about the written notice.[6] I know he was served with the HFO notice and I know the judge inquired. And I know that Mr. Dicks acknowledged that he had

---

[6] In closing argument, the state imparted that there is no requirement under the PRR statute that written notice be provided, unlike the HFO statute. Ex. T at 139.

> been told because I used the acronym and the
> judge said -- asked if I had explained all
> this to him and I said I had explained he's
> looking at fifteen years PRR, I don't know if
> I used the term prison releasee reoffender,
> but I didn't think my client cared what the
> statute was.    I think he cared what the
> maximum was and I explained that to him.

Id. at 131.  Counsel explained that he knew what Petitioner was facing from his scoresheet, his priors, and from the PRR statute. Id. at 133.  At each plea discussion, counsel informed Petitioner of the prison time he was facing if he rejected the plea offer and proceeded to trial.  Id.

After the evidentiary hearing, the trial court addressed claim six of the Rule 3.850 motion, now raised in federal habeas ground five.  Of great import, the court found trial counsel's testimony corroborated by previous events and more credible.  Ex. T at 165. This Court must defer to the state court's findings of fact, 28 U.S.C. § 2254(e)(1), including applying deference to the trial court's credibility determination that resolves conflicting testimony.  Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998), cert. denied, 526 U.S. 1047 (1999).  Indeed,

> The    deference    is    heightened    when
> reviewing a credibility determination in a
> Section 2254 application. Gore v. Sec'y, Dep't
> of Corr., 492 F. 3d 1273, 1300 (11th Cir.
> 2007), cert. denied, 552 U.S. 1190 (2008).
> Accord Kurtz v. Warden, Calhoun State Prison,
> 541 Fed. App'x 927, 929 (11th Cir. 2013) ("'A
> certain amount of deference is always given to
> a trial court's credibility determinations,'
> and a credibility determination in a case on
> habeas review receives heightened deference.")

(quoting <u>Gore</u>), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Kurtz v.</u>
<u>Jeanes</u>, 134 S. Ct. 2728 (2014).

<u>Fedor v. Sec'y, Dep't. of Corr.</u>, No. 8:13-CV-640-T-23EAJ, 2016 WL

866661, at *7 (M.D. Fla. Mar. 7, 2016).

Petitioner has not rebutted the presumption of correctness by

clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Therefore,

based on the credible testimony of Mr. Siegmeister that he notified

Petitioner of the state's intent to seek enhanced sentencing prior

to Petitioner's refusal of the five-year plea offer, Petitioner's

claim is unavailing.

The trial court explained its reasoning for rejecting the

claim of ineffective assistance of counsel:

> This Court has reviewed that recording of the
> December 3, 2010 hearing that occurred in this
> case, which was provided by the State at the
> evidentiary hearing. During that hearing, the
> Defendant's trial counsel explained that he
> had made the Defendant aware of the mandatory
> fifteen-year sentence that would be imposed if
> the Defendant was convicted as charged. He
> further explained that he may not have used
> the term "Prison Releasee Reoffender" but that
> he had explained the consequences of such
> treatment to him. The trial judge then swore
> the Defendant in and asked the Defendant if he
> understood everything that his attorney just
> explained. The Defendant, under oath,
> indicated that he understood. Therefore, in
> addition to the Defendant's trial counsel's
> testimony that he had informed the Defendant
> of prison releasee reoffender treatment at
> some prior time during their off-the-record
> discussions, but he was also able to provide
> this Court with actual evidence that refutes
> the Defendant's claim that he was first made
> aware of the potential for prison releasee
> reoffender "thirty minutes before sentencing."

Ex. T at 165.

The trial court found Petitioner's recollection of events "flawed" and trial counsel's testimony both corroborated by previous events and more credible. Id. Finding the record and trial counsel's testimony convincing, the court rejected Petitioner's claim. Id.

In denying this claim of the Rule 3.850 motion, the trial court concluded that counsel's performance was not deficient under Strickland. The 1st DCA affirmed. Its adjudication is unaccompanied by an explanation. Thus, the Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Now it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. If he fails to accomplish this task, he cannot prevail on ground five.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. In this instance, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable

determination of the facts.  As such, ground five is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition (Doc. 3) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly.

3.   The **Clerk of the Court** shall close this case.

4.   If Petitioner appeals the denial of his Amended Petition, **the Court denies a certificate of appealability**.[7]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of March, 2018.

_____
BRIAN J. DAVIS
United States District Judge

sa 3/14
c:
William C. Dicks
Counsel of Record